IN RE: PERRY HARRINGTON, EMPLOYEE, PLAINTIFF-APPELLANT V. ADAMS-ROBINSON
    ENTERPRISES, EMPLOYER, WAUSAU INSURANCE COMPANY, CARRIER,
    DEFENDANT-APPELLEES

No. COA97-452

(Filed 3 February 1998)

### Workers' Compensation § 235 (NCI4th)— temporary total disability—Form 21 agreement—release by physicians—presumption of continuing disability not rebutted

Evidence that plaintiff was released by his doctors to return to work did not support a finding that plaintiff was able to return to work at wages equal to those he was earning at the time of his injury and thus did not rebut the presumption from the entry of a Form 21 agreement for temporary total disability that plaintiff's disability continues until he returns to work at the same wage he was earning prior to his injury.

Judge WALKER dissenting.

Appeal by plaintiff from opinion and award entered 29 October 1996 by the North Carolina Industrial Commission. Heard in the Court of Appeals 6 January 1998.

On 24 August 1993, plaintiff suffered compensable injuries to his neck, knee and back while working as a carpenter with defendant-employer. Plaintiff was being transported to a job site in the back of his employer's pick-up truck and was injured when his head slammed into the passenger compartment back glass. On 7 October 1993, the parties entered into a Form 21 agreement in which the parties stipulated and agreed that the claimant was injured while in the scope of his employment and was entitled to workers' compensation benefits for his temporary total disability from 28 August 1993 and continuing for "nec." weeks.

On 8 September 1993, plaintiff began treatment with Dr. Timothy Holcomb, a chiropractor. Plaintiff was treated by Dr. Holcomb until December 1993 at which time he was given permission to return to work with no restrictions. Dr. Holcomb felt plaintiff had reached a maximum medical improvement on 22 December 1993. Dr. Holcomb referred plaintiff to a Dr. Ibrahim Oudeh, M.D., who also treated him for lower back pain. According to Dr. Oudeh's medical reports, he saw plaintiff six times in 1994 for follow-up visits. In November 1993,

plaintiff's employer sent him to Dr. Michael D. Gwinn, M.D., who recommended an aggressive back rehabilitation program. On 13 December 1993, Dr. Gwinn permitted the plaintiff to perform light duty work with no lifting over 25 pounds. At this time, plaintiff returned to defendant-employer and asked to do light work around the job site. The employer told plaintiff: "If you don't have a full release from the doctor, don't even think about coming back out here."

In January 1994 on the recommendation of Dr. Gwinn, plaintiff went to see Dr. Lestini, an orthopaedic surgeon, who performed various Waddle tests on plaintiff to determine if there was symptom magnification or malingering on the part of the plaintiff. The doctor noted inconsistences in plaintiff's responses. In January 1994, plaintiff returned to see Dr. Gwinn. Dr. Gwinn felt that plaintiff had reached maximum medical improvement and had sustained a five percent permanent partial impairment. On 18 January 1994, Dr. Gwinn released plaintiff to return to regular work. On 28 June 1994, plaintiff returned to Dr. Gwinn complaining of pain. Dr. Gwinn noticed inconsistencies in plaintiff's behavior. Dr. Gwinn noted that plaintiff exhibited a great deal of pain behavior, including moaning and groaning loudly as he moved around the examination room, but that he was able to climb on and off the exam table and change positions between sitting and lying and rolling over without apparent difficulty. Dr. Gwinn again saw no reason to put restrictions on plaintiff's work activities.

On 19 July 1994, the defendant-employer filed Form 24, an application to stop payment of workers' compensation benefits to plaintiff, and the Industrial Commission approved the application 4 August 1994. Plaintiff requested a hearing and his action was heard on 2 May 1995. The Deputy Commissioner decided that plaintiff's benefits should have been terminated after 18 January 1994 and denied plaintiff's claim for any further workers' compensation benefits. Further, the Deputy Commissioner determined that the defendant-employer was entitled to a credit for the overpayment of temporary total disability benefits between 17 January 1994 and 4 August 1994, when the Form 24 was approved. Plaintiff appealed to the Full Commission. After examining all the evidence, the Full Commission affirmed the Deputy Commissioner's opinion and award terminating plaintiff's temporary total disability payments effective 18 January 1994. Plaintiff appeals.

*Brenton D. Adams for plaintiff-appellant.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by Gregory M. Willis, for defendant-appellees.*

EAGLES, Judge.

We first consider whether plaintiff's benefits should have been terminated after 18 January 1994. Plaintiff has the initial burden of proving he was rendered disabled as a result of a work related injury. *Watson v. Winston-Salem Transit Authority*, 92 N.C. App. 473, 475, 374 S.E.2d 483, 485 (1988). The term "disability" means "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment." G.S. 97-2(9). Accordingly, in *Hilliard v. Apex Cabinet Co.*, our Supreme Court ruled that in order to find a worker disabled under the Act the Commission must find:

> (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.

305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). However, once a Form 21 agreement is signed the employee is presumed totally disabled. *Franklin v. Broyhill Furniture Indus.*, 123 N.C. App. 200, 205, 472 S.E.2d 382, 386 (1996), *cert. denied*, 344 N.C. 629, 477 S.E.2d 39 (1996). Once the disability is shown or stipulated by entry of a Form 21 agreement, there is a presumption that it continues until the employee returns to work at wages equal to those he was receiving at the time his injury occurred. *Watkins v. Central Motor Lines, Inc.*, 279 N.C. 132, 137, 181 S.E.2d 588, 592 (1971); *Tucker v. Lowdermilk*, 233 N.C. 185, 189, 63 S.E.2d 109, 112 (1951). Likewise there is a presumption that a disability ends when the employee returns to work at the same wages. *Id.*

Upon a showing of disability by the employee, the employer must produce evidence that suitable jobs are available for the employee and that the employee is capable of getting a job. *Burwell v. Winn-Dixie Raleigh, Inc.*, 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994); *Kennedy v. Duke Univ. Medical Ctr.*, 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990). A job is "suitable" if the employee is able to perform

the job, given her "age, education, physical limitations, vocational skills, and experience." *Franklin*, 123 N.C. App. at 206, 472 S.E.2d at 386 (quoting *Burwell*, 114 N.C. App. at 73, 441 S.E.2d at 149). A finding of a maximum medical improvement is not the equivalent of finding that the employee is able to earn the same wage and does not satisfy the defendant's burden of disproving an employee's disability. *Watson*, 92 N.C. App. at 476, 374 S.E.2d at 485.

Plaintiff argues that the Industrial Commission erred by failing to apply the presumption that the plaintiff's temporary total disability continues until he or she returns to work at the same wage earned prior to the injury. We agree.

Here, plaintiff has carried his initial burden of showing that he was disabled. The defendants have admitted liability by entering into the Form 21 agreement. Plaintiff began to receive benefits for his temporary total disability on 28 August 1993 and continuing for "necessary weeks." By January 1994, three doctors had released plaintiff to return to work. However, "[a]n employee's release to return to work is not the equivalent of a finding that the employee is able to earn the same wage earned prior to the injury, nor does it automatically deprive an employee of the benefit of the *Watkins v. Motor Lines* presumption." *Radica v. Carolina Mills*, 113 N.C. App. 440, 447, 439 S.E.2d 185, 190 (1994). As in *Radica*, there is no evidence to support a finding that the plaintiff retained any earning capacity after he was released by his doctors. The defendant-employer has not met its burden of proving that the plaintiff-employee was capable of earning the same wages. A release from a doctor is not enough to rebut the presumption of a disability. Accordingly, the Full Commission erred when it terminated plaintiff's benefits after 18 January 1994.

Reversed.

Judge WYNN concurs.

Judge WALKER dissents.

Judge WALKER dissenting.

I respectfully dissent from the majority opinion holding that the North Carolina Industrial Commission (the Commission) erred when it terminated plaintiff's benefits after 18 January 1994.

Included in the Commission's findings were the following:

8. On 17 January 1994 Dr. Gwinn opined that plaintiff had reached maximum medical improvement and released plaintiff from his care to return to work on 18 January 1994. . . .

9. . . . [P]laintiff has remained capable of returning to unrestricted work, including his regular carpenter's job, since 18 January 1994.

10. Although he has been released to return to unrestricted work plaintiff has not applied for work because he contends that he is no longer capable of the heavy work required by the type of carpenter job he had when he was injured. He also contends that the light work he admits to being capable of performing would pay substantially less than the $10.00 an hour he was earning as a carpenter and would not be appropriate for someone of his education.

. . .

13. On 20 July 1994 defendants filed a Form 24 Application of Employer or Insurance Carrier to Stop Payment of Compensation, which was approved by the Commission on 4 August 1994. . . .

Further, the deputy commissioner had found plaintiff's testimony as to continuing pain was not credible.

In the recent case of *In re Stone v. G & G Builders*, 346 N.C. 154, 157, 484 S.E.2d 365, 367 (1997), our Supreme Court, in reversing this Court and reinstating the opinion and award of the Industrial Commission stated:

In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and the extent of disability. In the context of a claim for workers' compensation, disability refers to the impairment of the injured employee's earning capacity. "If an award is made by the Industrial Commission, payable during disability, there is a presumption that disability lasts until the employee returns to work. . . ." However, as stated in Rule 404(1) of the Workers' Compensation Rules of the North Carolina Industrial Commission, this presumption of continuing disability is rebuttable. In the instant case the parties entered into a Form 21 Agreement which was approved by the Commission on 24 April

1992. On 13 November 1992 defendants' Form 24 application to stop payment was approved by the Commission. Any presumptions existing in favor of the employee were rebutted by defendants in this case through medical and other evidence.

(Citations omitted).

Here, the Commission's findings adequately established that the presumption existing in favor of the plaintiff was rebutted by the defendant through medical and other evidence.

I would affirm the opinion and award of the Industrial Commission.