I must, respectfully, dissent.
1. Plaintiff, a 39-year-old Hispanic who has difficulty expressing himself, worked for defendant-employer for two years. He was an apprentice electrician and his duties included pulling wire through conduits, installing receptacles, lights and light switches, and occasionally digging so that wire could be installed underground. He was paid $8.00 an hour and usually worked 40 hours a week although occasionally he worked overtime.
2. Prior to July 1998 plaintiff had not had any trouble with his back and was able to work at heavy labor. He had been doing construction all of his working life and had previously worked as a plumber and as a carpenter.
3. In July 1998 defendant-employer was doing electrical construction work at North Carolina Weslyan College in Rocky Mount. On most wire pulls several men and a machine were used to push and pull the wire through the conduit. On this particular wire pull from the electrical panel in the building to the transformer on the utility pole, only two men were used and they did not have the help of the machine. Consequently, this constituted "an unlooked for and untoward event which is not expected or designed by the person who suffers the injury and an "interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences. Adams v. Burlington Industries,61 N.C. App. 258, 260, 300 S.E.2d 455, 456 (1983) Any resulting injury is an injury by accident under the Workers Compensation Act.
4. While doing the wire pull under these unusual circumstances, plaintiff felt a soreness in his back. He felt a similar soreness in his back when he and another worker installed 100 to 120 receptacles at locations 16 inches above the floor. Installing that many receptacles in one day was also an unusual occurrence. The pain hit when he bent over and then straightened up. Eventually the back pain ran down his right leg. While plaintiff was unable to pinpoint the exact date that these two incidents occurred, they both occurred on the Weslyan College job during a cognizable period of time. Both injuries qualified as injuries by accident within the course and scope of employment and as specific traumatic incidents of the work assigned.
5. Plaintiff reported the incidents and the pain to his co-worker and to his foreman.
He did not seek immediate medical treatment because he thought the pain would go away. However, the pain subsequently became so severe that he went to the emergency room on July 29 and on August 3.
6. Hospital personnel treated plaintiff for a back strain with medication and rest. He was subsequently referred to Dr. E.O. Marsigli, an orthopedic surgeon. Dr. Marsigli, who saw him on August 6, 1998, treated him conservatively with medication and physical therapy, but his symptoms persisted, so the doctor ordered an MRI. The scan revealed evidence of ruptured discs at L3-4 and L4-5. Dr. Marsigli gave plaintiff an out of work note for the 10 days beginning August 6.
7. After a discussion between plaintiff and Dr. Marsigli regarding surgical options, plaintiff elected, because the fusion procedure would take him out of work longer, to have a decompression of both interspaces without a fusion. Dr. Marsigli performed the operation on September 11, 1998. Plaintiff did not obtain a good result from the surgery and had only been released to return to work at light duty as of the date of hearing before the Deputy Commissioner. The work incidents at the Weslyan College job caused plaintiffs injuries.
8. Although the hypothetical question regarding causation which was posed to Dr. Marsigli contained some inaccuracies and incomplete facts, it is clear that Dr. Marsiglis response would have been the same had the hypothetical question been 100% accurate. Contrary to the assertions in the hypothetical question, plaintiff did not lift and carry "spools of wire and he did not install all 100 to 120 receptacles himself but did it with a co-worker. He did lift and carry wire that usually was left on the spool on a truck and usually was unwound from there. The lifting of the heavy wire and the bending down to install receptacles 16 inches from the floor were both present in the hypothetical question and in the facts.
9. Dr. Marsiglis testimony on causation included: "Well, if he never had any previous history of back pain or leg pain or anything like that, a healthy 38-year-old man, that he did not had any degenerative changes in the spine — in other words, the spine was, theoretically speaking, a healthy spine and he was having a lot of heavy work done and then he had pain in the back, the it could be a possibility that he hurt his desk at that time — ruptured it.
10. At the time to hearing before the Deputy Commissioner the plaintiff had not received a permanent partial disability rating. Because of the continuing pain after the first surgery, plaintiff is in need of further surgery, including fusion of the spine.
11. Plaintiff was capable of returning to light duty in the fall of 1998. He made an effort to find light duty work but was unable to do so. He called Ed Parker at Watson Electrical who told him that he did not have any work available for him. He was out of work a year and a half. He was employed at McDonalds at the time of the hearing at a rate of $5.75 per hour for a 36 hour week.
Based on the foregoing, the Conclusions of Law should be:
1. Plaintiff sustained injuries by accident and specific traumatic incidents on two occasions in July of 1998 while working in the course and scope of his employment with defendant-employer and which resulted in herniated disks at the L3-L4 and L4-L5 levels. N.C. Gen. Stat. 97-2(6);
2. In workers compensation cases, plaintiff has the initial burden of proving that he suffers from a disability as a result of a work-related injury. Harrington v. Adams-Robinson Enterprises, 128 N.C. App. 496,498, 495 S.E.2d 377, 379, revd on other grounds, 349 N.C. 218,504 S.E.2d 786 (1998). Here, plaintiff has met that burden by showing that he is only able to do light duty work due to his compensable injuries and was unable to find any for an 18-month period. He is entitled to compensation at the rate of $213.34 for 18 months and is entitled to 2/3 the difference between his average weekly wage of $320.00 and the average weekly wage he was able to earn at McDonalds. The issue of permanent partial disability is left open for later resolution.
3. "Disability is a technical term, meaning that because of a workplace injury the employee suffers from an "incapacity . . . to earn the wages which the employee was receiving at the time of the injury in the same or any other employment. N.C. Gen. Stat. 97-2(9). To support a conclusion of disability, the Commission must find facts indicating that plaintiff has met his initial burden of proving that: (1) he was incapable of earning pre-injury wages in the same employment, (2) he was incapable of earning pre-injury wages in any other employment, and (3) the incapacity to earn pre-injury wages in either the same or other employment was caused by plaintiffs injury. Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595,290 S.E.2d 682, 683 (1982). Here, plaintiff has proven all three.
4. Once the employee has met his initial burden of proving "disability, the burden then shifts to the employer to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a job at pre-injury wages. Burwell v. Winn-DixieRaleigh, Inc., 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994). Here, defendants introduced no evidence to the above effect.
5. Plaintiff is entitled to payment of all medical expenses incurred, or to be incurred, as a result of his compensable injuries. N.C. Gen. Stat. 97-25.
Based upon the foregoing, my vote is to reverse the Opinion and Award of the Deputy Commissioner and order the defendants to pay to the plaintiff what he is surely owed.
 S/_____________ THOMAS J. BOLCH COMMISSIONER