***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. At the time of the alleged injury by accident, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff.
3. Pennsylvania National Insurance Company was the carrier on the risk.
4. Plaintiff's average weekly wage was $470.00, which generates a compensation rate of $313.35.
5. Plaintiff suffered a compensable left inguinal hernia on May 19, 1999, while in the employment of defendant-employer.
6. A Form 60 was filed on or about June 10, 1999, and plaintiff was paid temporary total disability benefits at a rate of $313.35 per week from May 24, 1999 to July 11, 1999.
7. Plaintiff came under the care of Dr. Mark A. Jenkins, underwent surgical repair of his hernia on June 4, 1999, and was released to return to work on July 12, 1999.
8. Plaintiff returned to Dr. Jenkins in July 2000 complaining of persistent left groin pain and underwent surgical exploration with excision of a segment of the left inguinal nerve on August 9, 2000.
9. A Form 62 was filed on or about August 17, 2000, and additional temporary total disability benefits were paid from August 7, 2000 to October 22, 2000. (This stipulation has been corrected.)
10. A Form 24 was approved on October 26, 2000 allowing defendants to terminate payment of compensation effective September 13, 2000.
11. Since being released to full duty by Dr. Jenkins on September 11, 2000 plaintiff has seen Dr. Robert Whitley, Dr. Robert Wallace and Piedmont Anesthesia and Pain Consultants.
In addition, the parties stipulated into evidence the following:
1. An indexed packet of medical records and reports.
 2. A packet of Industrial Commission Forms submitted May 4, 2001.
The Pre-Trial Agreement dated May 1, 2001 which was submitted by the parties is incorporated by reference.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. Plaintiff, who is forty years old, worked on and off for defendant-employer for nine to ten years as an electrician. On May 19, 1999 plaintiff sustained a compensable injury in the course of his employment when he lifted a large hydraulic pipe bender and developed pain in his groin. Following the injury, plaintiff went to Dr. Robert Whitley, his family doctor, who diagnosed him with a left inguinal hernia and referred him to Dr. Mark Jenkins, a general surgeon.
2. Dr. Jenkins examined plaintiff on May 25, 1999 and initially treated him conservatively since plaintiff wanted to postpone surgery. However, plaintiff's symptoms worsened and became more clearly related to a hernia, so plaintiff returned to Dr. Jenkins on June 1, 1999 requesting the operation.
3. Dr. Jenkins performed surgery to repair the hernia on June 4, 1999. Except for an apparent post-operative seizure, plaintiff did well in follow-up and was released to return to work on July 12, 1999. Plaintiff developed some incisional pain after working in his yard, so Dr. Jenkins advised him to stay out of work another week. It was not clear from the evidence when plaintiff actually returned to work but he received compensation for the entire time he was out of work after his original surgery.
4. Defendants admitted liability for benefits under the Workers' Compensation Act and paid for plaintiff's medical treatment as well as his compensation for temporary total disability pursuant to a Form 60.
5. On September 7, 1999 plaintiff returned to Dr. Jenkins complaining of residual numbness from the surgery. Dr. Jenkins assured plaintiff that the numbness would resolve or would be minimal and released him from medical care. Plaintiff had no further complaints at that time.
6. Plaintiff returned to work for defendant-employer after his surgery. Although plaintiff had a problem with absenteeism, there was no difference in his attendance before and after his injury. Plaintiff quit his employment with defendant-employer in May 2000 and began working for another electric company.
7. In 2000 plaintiff reportedly began to experience recurrent pain in his left groin which radiated to his left testicle. On May 16, 2000 when plaintiff saw Dr. Whitley for a complete physical, he mentioned that he was having pain in his lower abdomen. In June when plaintiff returned in follow-up he complained of pain specifically in the area where he had had surgery. At the next follow-up visit on July 11, 2000 Dr. Whitley referred plaintiff to Dr. Timothy Davis at Central Carolina Surgery.
8. Plaintiff saw Dr. Davis on July 21, 2000. Dr. Davis noted that plaintiff was fit and muscular, that he appeared well on physical examination but that he was quite jumpy and complained of pain with examination and palpation. The examination was otherwise negative. Dr. Davis was of the impression that plaintiff presented an unusual post-operative situation and Dr. Davis was not sure of the cause. Dr. Davis ordered a limited CT scan of the groin and noted that he refused plaintiff's request for additional pain medications.
9. Plaintiff underwent the CT scan, which showed no abnormalities, but then returned to Dr. Jenkins instead of going back to Dr. Davis. Dr. Jenkins examined him on July 27, 2000. There was no evidence of recurrent hernia on examination. Since plaintiff complained of tenderness over the pubic tubercle, Dr. Jenkins injected him in that area. Plaintiff had some relief from the injection, so Dr. Jenkins concluded that plaintiff had left ilioinguinal nerve neuropathy with possible entrapment of the nerve. On August 9, 2000 Dr. Jenkins performed surgery to explore the surgical site and to decompress the nerve. During the operation, Dr. Jenkins did not find the nerve to be entrapped. Dr. Jenkins elected to remove the nerve, since it was a sensory nerve with no motor function, and he advised plaintiff that there would likely be some numbness associated with the removal of the nerve.
10. When plaintiff returned in follow-up on August 15 and 24, 2000, he indicated that he had only had one brief reoccurrence of his pre-operative pain. On September 5, 2000 plaintiff was still doing well with only one episode of some mild groin pain which was of a different nature.
11. Dr. Jenkins found plaintiff to have reached maximum medical improvement and released plaintiff to return to work effective September 11, 2000 with no restrictions and no permanent functional impairment.
12. Plaintiff did not return to work on that date and has not sought employment since being released to return to work. Plaintiff failed to return to Dr. Jenkins on September 19, 2000 for his next scheduled follow-up appointment, and the doctor's office was unable to get in touch with him. Rather, on September 12, 2000 plaintiff returned to Dr. Whitley, who continued writing notes for him to be out of work based only on plaintiff's assertion that he was unable to work. Dr. Whitley also continued to prescribe pain medications.
13. Defendants, who had resumed payment of compensation for temporary total disability pursuant to a Form 62, filed a Form 24 request to stop payment with the Industrial Commission. The Form 24 was allowed by order of the Commission filed October 26, 2000 and authorized defendants to terminate payment of compensation effective September 13, 2000.
14. On December 13, 2000 Dr. Whitley contacted Dr. Jenkins about reevaluating plaintiff. Dr. Jenkins declined to treat plaintiff, pointing out that he "could not find a source or objective finding to support the complaints he [plaintiff] was having." Dr. Whitley then referred plaintiff to Dr. Gary Waters at Wake Forest University Medical Center. Dr. Waters could not identify a source for plaintiff's persistent pain and recommended a pain clinic evaluation.
15. Plaintiff was treated at Piedmont Anesthesia and Pain Consultants on four occasions from March 7, 2001 through May 29, 2001. Dr. Stuart Meloy diagnosed ilioinguinal neuralgia and injected the region of the ilioinguinal nerve. Additional pain medications were also prescribed. Plaintiff received some relief from his pain as a result of this treatment.
16. Dr. Jenkins later reviewed the pain clinic records and disagreed with the diagnosis because of the excision of the ilioinguinal nerve in the surgery he performed on August 9, 2000. The Commission gives greater weight to the opinions of Dr. Jenkins than to Dr. Meloy.
17. Plaintiff has alleged that he continued to experience disabling pain in his groin as a result of his hernia and two operations, and he has claimed continuing compensation after September 13, 2000. The Deputy Commissioner did not accept plaintiff's complaints of continuing, disabling pain as credible. The Full Commission declines to overturn the Deputy Commissioners' credibility determination and finds that the plaintiff's complaints of ongoing disabling pain are not credible.
18. As of September 11, 2000 plaintiff was capable of working without restrictions and able to earn wages equivalent to those he had been earning at the time of his injury. Defendants paid compensation to plaintiff until October 22, 2000 when they were notified of the decision in the Form 24 proceeding. Consequently, defendants overpaid compensation to plaintiff for temporary total disability.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On May 19, 1999 plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As the result of his compensable injury by accident plaintiff was temporarily totally disabled and was entitled to receive compensation which has already been paid by defendants. Plaintiff is not entitled to compensation for temporary total disability as a result of his May 19, 1999 injury after September 11, 2000 when he was released to return to work with no restrictions and no permanent functional impairment.Harrington v. Adams-Robinson Enterprises, 349 N.C. 218, 504 S.E.2d 786
(per curiam reversed pursuant to dissent in 128 N.C. App. 496,495 S.E.2d 377 (1998)). Defendants overpaid compensation to plaintiff from September 13, 2000 through October 22, 2000. N.C. Gen. Stat. §97-29.
3. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident. The approved medical care includes treatment by Dr. Waters and Piedmont Anesthesia and Pain Consultants. N.C. Gen. Stat. §§ 97-2(19), 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants are entitled to a credit for compensation paid after September 12, 2000 against any future compensation which may be found due in this case.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident, including treatment rendered by Dr. Waters and Piedmont Anesthesia and Pain Consultants.
3. Plaintiff's claim for further indemnity benefits under the Workers' Compensation Act is hereby DENIED.
4. Defendants shall pay the costs.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ RENE C. RIGGSBEE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER