MICHAEL J. DEASON, Employee, Plaintiff,
v.
OWENS-ILLINOIS, INC., Employer, and INSURANCE COMPANY STATE OF PENNSYLVANIA (AIG), Carrier, Defendants.
No. COA07-1159
Court of Appeals of North Carolina
Filed August 19, 2008
This Case not for Publication
Poisson, Poisson & Bower, PLLC, by Fred D. Poisson, Jr. and E. Stewart Poisson, for plaintiff-appellee.
Brooks, Stevens & Pope, P.A., by Matthew P. Blake, for defendant-appellants.
STROUD, Judge.
Defendants Owens-Illinois, Inc., and AIG appeal from the Amended Opinion and Award of the Industrial Commission entered on 12 July 2007, which awarded workers' compensation benefits to plaintiff for injuries to his left arm. Because the Commission's findings of fact were supported by competent evidence in the record, and its conclusions were based on its findings of fact and a correct application of the law, we affirm.

I. Factual Background
Plaintiff Michael Deason was employed by defendant-employer Owens-Illinois as an injection press operator. He operated five machines which made plastic parts such as canisters and lids. His duties included using a paddle to rake parts out of the machine into either a carton or a large plastic box called a "gaylord," and periodically checking the quality of the parts produced by each machine. Plaintiff spent most of his time at work raking parts from the machines into a gaylord.
On 16 December 2001, plaintiff tripped and fell at his workplace, injuring his right elbow. Defendants paid $14,232.89 for medical treatment of the injury to plaintiff's right elbow. By July 2003, plaintiff had returned to work as a press operator. After he returned to work, plaintiff continued to feel pain in his right arm. Because of the continued right arm pain, plaintiff began to use his left arm to rake parts into the gaylord. Plaintiff then began to experience pain in his left shoulder.
On 31 March 2004, plaintiff filed Form 18 with the Industrial Commission. On 8 March 2005, plaintiff filed Form 33 alleging that defendants had improperly denied temporary total disability benefits and medical treatment for the injuries sustained in plaintiff's fall on 16 December 2001. Defendants denied that plaintiff was entitled those benefits, contending that Dr. Fedder's medical opinion, on which plaintiff based his claims, was in error because the opinion was based solely on information provided by plaintiff, and defendants were not given an opportunity to present information to Dr. Fedder.
Deputy Commissioner Morgan S. Chapman initially heard the claim on 3 April 2006. By an Opinion and Award filed on 19 October 2006 ("2006 Opinion and Award"), the deputy commissioner concluded that "[t]he left shoulder condition plaintiff developed by January 2005 was a direct and natural result of the compensable right elbow injury he sustained on December 16, 2001." Accordingly, plaintiff was awarded temporary total disability benefits and all medical expenses arising from the left shoulder condition.
Defendants appealed the 2006 Opinion and Award to the Full Commission. The Commission reviewed plaintiff's claim on 22 May 2007. On 21 June 2007, the Commission entered an Opinion and Award ("2007 Opinion and Award") which concluded that plaintiff's left shoulder injury resulted from his compensable right elbow injury. The Commission further concluded "if plaintiff is capable of some work, it would be futile for him to seek employment due to his work history consisting solely of manual labor, his upper extremity restrictions and his preexisting [Charcot-Marie-Tooth] syndrome." Accordingly, the Commission awarded plaintiff temporary total disability benefits and all medical treatments related to his right elbow and left shoulder conditions. The 2007 Opinion and Award was amended 12 July 2007 to include plaintiff's average weekly wage. Defendants appeal.

II. Standard of Review
In order to prevail on a disability claim for workers' compensation, the plaintiff bears the burden of proving by a preponderance of the evidence the existence and extent of his disability, Fletcher v. Dana Corporation, 119 N.C. App. 491, 494, 459 S.E.2d 31, 34, disc. review denied, 342 N.C. 191, 463 S.E.2d 235 (1995), and that the disability was caused by a disease or injury reasonably related to his employment. Holley v. ACTS, Inc., 357 N.C. 228, 231-32, 581 S.E.2d 750, 752 (2003). In deciding whether a plaintiff has met his burden, the Industrial Commission must consider all competent evidence presented, Weaver v. American National Can Corp., 123 N.C. App. 507, 510, 473 S.E.2d 10, 12 (1996), and make specific findings of fact to support its conclusions for all "crucial questions." Hilliard v. Apex Cabinet Co., 305 N.C. 593, 596, 290 S.E.2d 682, 684 (1982). This Court gives deference to the Industrial Commission as the finder of fact, and if "there is some evidence of substance which directly or by reasonable inference tends to support the findings, this Court is bound by such evidence, even though there is evidence that would have supported a finding to the contrary." Ard v. Owens-Illinois, 182 N.C. App. 493, 496, 642 S.E.2d 257, 259-60, disc. review denied, 361 N.C. 690, 652 S.E.2d 254 (2007) (citations and quotation marks omitted). The Commission's legal conclusions will not be disturbed on appeal if the Commission has correctly applied the relevant law, Clark v. Wal-Mart, 360 N.C. 41, 43, 619 S.E.2d 491, 492 (2005), and "there are sufficient findings of fact based on competent evidence to support" the conclusions, Estate of Gainey v. Southern Flooring and Acoustical Co., 184 N.C. App. 497, 503, 646 S.E.2d 604, 608 (2007) (citation and quotation marks omitted).

III. Causation
Defendants contend the Commission erred by concluding that plaintiff's injury to his left shoulder was caused by his employment with defendant-employer. They argue that the Commission erred by: (1) failing to conclude that plaintiff was disabled by a pre-existing, non-job-related disease rather than by reason of his employment; and (2) concluding that plaintiff's left shoulder injury resulted from his compensable right elbow injury.
A. Non-Job-related Disease
Defendants argue that the Commission erred by failing to find that plaintiff was disabled by a pre-existing non-job-related disease and therefore was not disabled as a result of his employment with defendant-employer. Defendants argue the evidence that a pre-existing disease caused plaintiff's disability was plenary, and the Commission erred by finding otherwise.
Specifically, defendants assigned error to the Commission's tenth and fifteenth findings of fact:
10. . . . The disease [CMT syndrome] affected plaintiff from his knees to his feet and to some degree, impaired his ability to walk. Although Dr. Snyder felt that plaintiff should not work at that time, plaintiff was able to keep up with his machines and continued working.
. . . .
15. . . . Dr. Snyder testified that plaintiff's CMT syndrome is substantially in his legs and does cause problems with plaintiff's ability to work; however, it does not disable plaintiff from using his upper body to perform work.
Defendants argue that these findings numbered ten and fifteen were erroneous because Dr. Snyder actually testified that plaintiff had become disabled as a result of Charcot-Marie-Tooth (CMT) syndrome, a pre-existing, non-job-related disease, rather than by reason of his employment. We disagree.
In his deposition, Dr. Snyder testified:
Q. [F]or what reason did you see [Mr. Deason] on [14 July 2004]?
A. I was seeing him more for problems with his legs.
Q. Did he make any mention of having arm pain on that day?
A. There is no mention of that, sir.
. . . .
Q. [W]hat did you conclude [about his ability to be gainfully employed]?
A. My feeling was because of his weakness, as well as his pain, I felt that he should not  he was not able to work at that time.
. . . .
Q. . . . The CMT disorder was substantially in Mr. Deason's legs; is that correct?
A. Yes, sir.
Q. And that which you felt would cause him problems with continuing to work was relating to the legs; is that correct?
A. Yes, sir.
Q. If he had had a job he could have performed with his hands, and somebody could have wheeled him up, for example, you would not have an opinion that . . . the leg injury would necessarily disable him from upper body work, would you?
A. That is correct.
Despite the fact that Dr. Snyder may have believed that plaintiff could not work as of July 2004, plaintiff did in fact continue to work, as the Commission found in its tenth finding. This testimony and the reasonable inferences which may be drawn from it, taken in context with the undisputed evidence that plaintiff did actually continue working until 23 January 2005, are sufficient to support the findings numbered ten and fifteen quoted above. The Commission's findings on this issue are therefore binding on appeal. Accordingly, we hold that the Commission did not err in failing to find that plaintiff's disability was caused by a pre-existing, non-job-related disease rather than by his employment with defendant-employer. This assignment of error is overruled.
B. Natural Consequence of a Compensable Injury
Defendants also assigned error to the Commission's conclusion that plaintiff's left shoulder injury resulted from his compensable right elbow injury. Defendants contend that (1) the Commission misapprehended the law because it presumed that plaintiff's left shoulder injury resulted from his compensable right arm injury, incorrectly placing the burden on defendants to disprove the causal relationship; and (2) the Commission's finding in support of this conclusion was not based on competent evidence because (i) Dr. Fedder offered an opinion based on hypothetical facts not supported by the record, and (ii) the Commission mischaracterized Dr. Fedder's testimony. We disagree.
Defendants contend that plaintiff's "release to [return to work] without restrictions is evidence that can rebut a presumption of disability. Plaintiff's earning capacity was subsequently obliterated, when in July 2004, Dr. Snyder deemed him unable to maintain gainful employment due to [Charcot-Marie-Tooth Syndrome]." Defendants' argument is not clear but it appears to be that when a plaintiff returns to work without restrictions, there should be no presumption in favor of the plaintiff in a claim for benefits for further injury as a natural and direct consequence of the first injury. In support, defendants cite Harrington v. Adams-Robinson Enterprises, 349 N.C. 218, 504 S.E.2d 786 (1998) (reversing per curiam for the reasons stated in 128 N.C. App. 496, 500, 495 S.E.2d 377, 380 (1998) (Walker, J., dissenting). However, Harrington is inapposite to the case sub judice, as it involved the Commission's termination of temporary benefits when defendants successfully overcame the presumption of continuing disability with the presentation of medical and other evidence of plaintiff's fitness to return to work following injuries sustained in a work-related accident, not a second injury which occurred as a natural consequence of the initial compensable injury. Harrington, 128 N.C. App. at 500-01, 495 S.E.2d at 380.
Defendant is correct that a plaintiff is not entitled to a "presumption" that a later injury was caused by his earlier compensable injury. However, the Commission did not give plaintiff the benefit of a presumption that his left shoulder injury was caused by his right arm injury. The Commission correctly stated the law that "[o]veruse injuries are a natural consequence of a compensable injury if there is appropriate medical testimony to link the overuse to the compensable injury." (Citing Coe v. Haworth Wood Seating, 166 N.C. App. 251, 603 S.E.2d 549 (2004). The Commission's thirteenth finding of fact, discussed in detail below, shows that the Commission considered medical testimony which linked the overuse left arm injury to the prior compensable right arm injury, weighed the testimony, and found the necessary facts to support linking the two injuries.
Defendants further argue that the Commission wrongly concluded that plaintiff's injury was caused by his employment with defendant-employer because the Commission's thirteenth finding was based on a mischaracterization of Dr. Fedder's testimony and therefore not supported by competent evidence in the record:
13. On January 17, 2005, Dr. Fedder examined plaintiff's right elbow and left shoulder. . . . At his deposition, Dr. Fedder affirmed his opinion set forth in his January 17, 2005 opinion letter that plaintiff's right elbow injury caused the overuse of his left shoulder and the resulting left shoulder problem. . . .
Defendants contend that this finding was contrary to Dr. Fedder's deposition testimony and that even if it accurately characterizes Dr. Fedder's testimony, it is not competent evidence because Dr. Fedder's opinion was simply conjecture based on a hypothetical scenario which is not in the factual record. North Carolina law requires competent expert medical evidence in support of complicated medical causation issues. Young v. Hickory Bus. Furn., 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000).
Due to the complexities of medical science, particularly with respect to diagnosis, methodology and determinations of causation, this Court has held that where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury. However, when such expert opinion testimony is based merely upon speculation and conjecture, it can be of no more value than that of a layman's opinion. As such, it is not sufficiently reliable to qualify as competent evidence on issues of medical causation.
Id. (internal citation and quotation marks omitted). This Court has further determined that "[a]n expert's opinion that was solicited through the assumption of facts unsupported by the record is entirely based on conjecture" and is accordingly inadequate to support a finding of fact. Seay v. Wal-Mart Stores, Inc., 180 N.C. App. 432, 437, 637 S.E.2d 299, 303 (2006).
Contrary to defendant's contention, Dr. Fedder's opinion was not based upon speculation or conjecture, but upon the evidence. Plaintiff testified under oath before the deputy commissioner about his job responsibilities:
Q. And when these caps were raked off, where were they raked?
A. Oh, we put them either in regular carton boxes like you would see every day, or sometime[s] we raked them in what they call [a] gaylord. They were about probably 3 1/2 by 3 1/2 square.
Q. How tall?
A. Maybe 3 1/2, 4 feet.
Q. Now, what part of your  what percentage of your job involved [raking] the caps into the boxes or into the gaylord?
A. Majority, if that is acceptable.
. . . .
Q. . . . [W]ould [you] do this with alternating one hand . . . ?
A. Yes.
Q. Please tell us why that's so.
A. [When I returned to work after my right elbow injury] I would rake [as] long as I could with my right arm then I would have to go to my left. But toward the end it was my left. I just couldn't take it with my right any longer.
. . . .
Q. . . . [W]hat percentage was right-handed work and what was left-handed work in the raking of those bins?
A. I don't have a percentage, but I could say [the] majority had to go to the left hand because the right one just couldn't take it.
. . . .
I was running presses and I was having to rake with my right arm. And when it  it finally got to the point, well, I just  I could not take it anymore, so I went to my left arm.
In a letter from plaintiff's counsel to Dr. Fedder, counsel described plaintiff's job in this way:
Mr. Deason has to rake the caps off of the assembly line belt into a gaylord, which is a large box approximately four feet long, three feet wide and three feet high. After attempting to do things with his right arm unsuccessfully because of the pain, Mr. Deason began using his left arm almost exclusively, raking the caps off of the assembly line.
In response to that description of plaintiff's job, Dr. Fedder answered "Yes" in response to this statement:
In my medical opinion Mr. Deason's use of his left arm as described by him to me and as described above by Mr. Poisson and his inability to use his right arm caused an overuse, which resulted in a left shoulder injury and the restrictions that I imposed on January 17, 2005 and January 21, 2005 for light duty work with no use of the left upper extremity and no use of the right elbow.
Dr. Fedder also wrote "r[ight] elbow injury caused overuse [of] left shoulder" underneath his "Yes" answer to further explain his opinion. Dr. Fedder reaffirmed this opinion in his sworn deposition testimony.
Plaintiff's job as described to Dr. Fedder by counsel was essentially identical to plaintiff's description of his job in his sworn testimony before the deputy commissioner. Dr. Fedder's opinion was based upon facts in the record and was not conjectural. Nor was Dr. Fedder's opinion based upon a hypothetical question which assumed facts not in evidence. In support of their argument to this effect, defendants reference Dr. Fedder's deposition testimony that a shoulder injury like plaintiff's would most likely occur if the arm was frequently raised to horizontal or above. Defendants point out that plaintiff's arm movements at his job were primarily below horizontal and argue that the Commission erred in ignoring that testimony. However, the portion of Dr. Fedder's deposition referenced by defendants and which defendants argue the Commission should have relied uponwas based on hypothetical information not in the record. Dr. Fedder in fact went on to testify that while motions below horizontal would be "less likely" to cause a shoulder injury like plaintiff's, "there's always exceptions to every rule[.]"
The Commission considered credible Dr. Fedder's testimony as to the cause of plaintiff's left shoulder injury, as was its prerogative. Thus, the Commission's thirteenth finding of fact is binding on appeal, even if there was other evidence in the record which might have supported a different finding. Further, the Commission's thirteenth finding supports the Commission's conclusion that plaintiff's left shoulder injury was a natural consequence of his compensable right elbow injury. The Commission did not err in so concluding.

IV. Existence of a Disability
Defendants contend that plaintiff did not prove the existence of a disability. Disability is defined for the purpose of awarding workers' compensation benefits as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2005); Russell v. Lowes Product Distribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). An employee may prove the existence of a disability in one of four ways, sometimes referred to as the Russell prongs:
(1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.
Russell, 108 N.C. App. at 765, 425 S.E.2d at 457 (citations omitted).
Defendants argue that the Commission's eighth conclusion of law, which concluded that plaintiff proved his disability by meeting the third prong of Russell,[1] is in error. The Commission's eighth conclusion states in pertinent part:
8. . . . [E]ven if plaintiff is capable of some work, it would be futile for him to seek employment due to his work history consisting solely of manual labor, his upper extremity restrictions and his preexisting CMT syndrome. . . . Defendants did not produce competent evidence that suitable jobs are available and that plaintiff is capable of obtaining a suitable job, taking into account his physical and vocational limitations.
Defendants argue that the only finding of fact which supports this conclusion is the tenth:
10. On July 14, 2004, plaintiff saw Dr. Snyder for a neurological evaluation regarding pain and weakness in his legs. The doctor . . . concluded that the lower extremity symptoms were due to progression of plaintiff's pre-existing Charcot-Marie-Tooth syndrome (CMT syndrome), a hereditary neuropathy of the peripheral nerves. The condition causes numbness, tingling, muscle weakness and atrophy of the lower extremities and moves progressively upwards, sometimes affecting the upper extremities in its later stages. The disease affected plaintiff from his knees to his feet and to some degree, impaired his ability to walk. Although Dr. Snyder felt that plaintiff should not work at that time, plaintiff was able to keep up with his machines and continued working.
Defendants contend that this finding is in error because Dr. Snyder testified on direct examination that "because of [plaintiff's] weakness [when I examined him on 14 July 2004], as well as his pain, I felt he should not  he was not able to work at that time[,]" but testified on cross-examination that "I thought he was disabled in July 2004." Comparing this language, defendants argue "[f]rom the quoted sections, it is evident that Dr. Snyder withdrew the `should not' phrasing found in the Commission's 10th finding and established that plaintiff `was not' able to work."
This is a distinction without a difference. This Court considers only whether the Commission's finding is supported by competent evidence; it does not re-weigh evidence. The Commission found that CMT is progressive. Dr. Snyder testified that CMT is progressive. Dr. Snyder's testimony is sufficient to support that finding. It was reasonable for the Commission to infer from Dr. Snyder's testimony that plaintiff's progressive CMT would have made it futile for plaintiff to seek other employment. The Commission's tenth finding is therefore binding on appeal. Furthermore, this finding of fact supports the Commission's eighth conclusion of law that because it would be futile for plaintiff to seek other employment due to preexisting conditions and other factors not related to his injury, plaintiff had proven the existence of his disability. This assignment of error is overruled.
Defendants next argue that the Commission misapprehended the law when it "equate[d] plaintiff's work in his pre-injury employment with his earning capacity." In support of this proposition, defendants cite Peoples v. Cone Mills Corp., 316 N.C. 426, 342 S.E.2d 798 (1986), and Ashley v. Rent-A-Car Co., 271 N.C. 76, 155 S.E.2d 755 (1967). However, because these cases both dealt with an injured employee's post-injury employment and earnings, they are not entirely apposite to this case. See Peoples, 316 N.C. at 437, 342 S.E.2d at 805-06 ("If post-injury earnings do not reflect th[e] ability to compete with others for wages, they are not a proper measure of earning capacity." (Emphasis added.)); Ashley, 271 N.C. at 83-84, 155 S.E.2d at 761 (An employer may not deprive an injured employee of medical expenses by simply, "from motives of generosity or otherwise, [] continu[ing] to pay the same wages after his injury." (Emphasis added.))
Defendants essentially argue Dr. Snyder's testimony that plaintiff was disabled as of 14 July 2004 is dispositive as to the beginning of his disability. They use Peoples and Ashley to argue that plaintiff's work after 14 July 2004, earning his customary wages, does not support a finding that plaintiff was not disabled from CMT syndrome. Defendants imply that plaintiff's work after 14 July 2004 was based on modified work duties, the employer's sympathy, or his co-workers help in doing the work. This argument is based upon the rationale of Peoples, as follows:
Although plaintiff is capable of performing [employer's make-work job], as a matter of law, [it] is no indication of plaintiff's ability to earn wages. Disability is defined by the Act as impairment of one's earning capacity rather than physical disablement.
. . . .
[A]n injured employee's earning capacity must be measured not by the largesse of a particular employer, but rather by the employee's own ability to compete in the labor market. If post-injury earnings do not reflect this ability to compete with others for wages, they are not a proper measure of earning capacity.
. . . .
Wages paid an injured employee out of sympathy, or in consideration of his long service with the employer, clearly do not reflect his actual earning capacity, and for purposes of determining permanent disability are to be discounted accordingly. The same is true if the injured man's friends help him to hold his job by doing much of his work for him, or if he manages to continue only by delegating his more onerous tasks to a helper, or if the work for which claimant is paid is made work or sheltered work.
Peoples, 316 N.C. at 434-37, 342 S.E.2d 798 at 804-06 (citations, quotation marks, ellipses and emphasis omitted).
However, there was no evidence in the record sub judice that plaintiff's work duties after July 2004[2] were modified in any way, nor that the employer was continuing to pay plaintiff his customary wages based upon sympathy despite his inability to perform his job. There is no evidence that plaintiff received assistance with his work duties. Rather, as we discussed supra, the evidence supports the Commission's findings that plaintiff became disabled from his left arm overcompensation injury. This assignment of error is overruled.
Defendants next contend that the Commission erred by concluding that "plaintiff has not yet reached maximum medical improvement and continues to be incapable of earning his same wages in the same or any other employment." They contend that this conclusion is unsupported by the findings of fact because it is contrary to the Commission's finding that "[p]laintiff reached maximum medical improvement with respect to his right elbow injury as of September 13, 2003. . . ."
However, "[m]aximum medical improvement is the initial point at which either party can seek a determination of permanent loss of wage-earning capacity." Effingham v. Kroger Co., 149 N.C. App. 105, 114, 561 S.E.2d 287, 294 (2002) (emphasis added). MMI is not dispositive as to the question of the existence of a disability. Effingham, 149 N.C. App. at 114, 561 S.E.2d at 294, Russell, 108 N.C. App. at 765, 425 S.E.2d at 457. Plaintiff was not declared permanently disabled by the Commission, therefore this language is mere dicta. Moreover, we have already determined supra that the Commission's conclusion of disability was supported by findings of fact which were supported by competent evidence in the record. This assignment of error is overruled.

V. Remaining Assignments of Error
Finally, defendants assign error to the following findings of fact:
8. By July 2003, defendant-employer was manufacturing caps for containers of fabric softener, which were called DBS caps. One press machine would make 24 caps at a time every 15 seconds, which was significantly faster than the other parts were made. The gaylord held approximately 3000 caps and filled up in 15 minutes. When the machines made DBS caps, plaintiff spent the majority of his time raking the caps out of the machine, and if he got delayed with a problem, the caps would overflow onto the floor.
9. . . . After returning to work as a press operator [subsequent to his compensable right elbow injury], raking parts was quite painful to plaintiff's right elbow.
Defendants quibble with these findings of fact, arguing: (1) simple math shows the gaylord would have filled up at the production rate specified in about ten minutes, not fifteen; (2) plaintiff testified both that he spent the "majority" of his time raking parts and that he spent the "majority" of his time walking between the five machines from which he raked caps, therefore this finding cannot be correct because by definition there can be only one "majority" in a division; and (3) plaintiff testified that raking parts caused sharp pain in his right "arm" rather than his right elbow.
"[W]here there are sufficient findings of fact based on competent evidence to support the tribunal's conclusions of law, the decision will not be disturbed because of other erroneous findings which do not affect the conclusions." Gainey, 184 N.C.App. at 503, 646 S.E.2d at 608 (citation, quotation marks, and internal brackets omitted). The portions of findings eight and nine to which defendants excepted are primarily background information and do not affect the ultimate conclusion. Even assuming arguendo that these findings were not supported by competent evidence in the record, they cannot be the basis for overturning the Commission's decision.

VI. Conclusion
The Industrial Commission's findings of fact were supported by competent evidence in the record. In turn, its conclusions were supported by those findings of fact and based on a correct application of the law. Accordingly, we affirm the 12 July 2007 Amended Opinion and Award of the Industrial Commission.
Affirmed.
Judges HUNTER and ELMORE concur.
Report per Rule 30(e).
NOTES
[1] "(3) [T]he production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment." Russell, 108 N.C. App. at 765, 425 S.E.2d at 457.
[2] This argument is similar to defendant's argument that plaintiff was actually disabled as of 14 July 2004, before he actually stopped working on 23 January 2005.