**JOHNSON v. LOWE'S COS.**

[143 N.C. App. 348 (2001)]

RICKY JOHNSON, Employee, Plaintiff v. LOWE'S COMPANIES, INC., Employer, SELF INSURED (GAB ROBINS, Servicing Agent), Defendant

No. COA00-124

(Filed 15 May 2001)

**Workers' Compensation— presumption of continuing disability—rebutted—medical and other evidence—fraud**

The Industrial Commission did not err in a workers' compensation case by failing to apply the presumption arising from a Form 21 agreement that plaintiff employee's disability continued until he returned to work at the same wage earned prior to his injury, because any presumptions existing in favor of plaintiff have been rebutted by defendants through medical and other evidence including witness testimony, videotaped surveillance of plaintiff working on a regular basis, as well as strong evidence of fraud regarding the physical limitations of plaintiff's injury and his capacity to engage in work-related activities.

Judge HUDSON dissenting.

Appeal by plaintiff from Opinion and Award of the North Carolina Industrial Commission filed 2 November 1999. Heard in the Court of Appeals 20 February 2001.

*Franklin Smith for plaintiff appellant.*

*McElwee Firm, P.L.L.C., by Karen Inscore McElwee, for defendant appellees.*

McCULLOUGH, Judge.

On 16 February 1993, plaintiff Ricky Johnson injured his knee while working for defendant Lowe's Companies, Inc., when he slipped in a puddle of oil and twisted his leg. Plaintiff sustained a thirty percent permanent partial impairment to his right knee. Plaintiff and defendant-employer entered into a Form 21 Agreement for Compensation for Disability, which was approved by the Industrial Commission on 3 May 1993. On 26 November 1997, defendants deposed plaintiff in an effort to determine his ability to engage in employment and other activities. Plaintiff testified at his deposition that his knee problems had intensified such that his everyday activities were extremely restricted. Specifically, plaintiff stated that he could not crouch down, kneel, squat or stand for more than twenty minutes.

**JOHNSON v. LOWE'S COS.**

[143 N.C. App. 348 (2001)]

Following a criminal indictment of plaintiff on 10 December 1997 for fraudulently obtaining workers' compensation benefits and for perjury, defendants filed a Form 24 Application to Terminate or Suspend Payment of Compensation with the Industrial Commission, claiming that plaintiff had "fraudulently misrepresented his condition that he was unable to work." Plaintiff, responding through counsel, contested the termination of benefits, stating that he had "been given total and permanent disability by his treating physician, Dr. Walton W. Curl on February 7, 1994[,]" and that "after completing the treatment provided for him by his employer and after finishing a rehabilitation program, he [was] still unable to stand on his right leg for any prolonged period of time."

On 27 August 1998, the matter was heard before a deputy commissioner of the Industrial Commission, whose opinion and award was later adopted by the Full Commission (Commission). Upon reviewing the testimony of numerous witnesses, as well as videotaped surveillance of plaintiff conducted by both defendants' and the Industrial Commission's investigators, the Commission found that "[p]laintiff has consistently misrepresented his knee condition and his physical capacity to work to his health care providers, including Dr. Curl, and his employer[,]" and that "plaintiff has repeatedly demonstrated the capacity to engage in activities through which he could earn wages. He is able to work as an auto mechanic. He is able to work in logging. He is capable of standing, walking, kneeling, stooping, and bending on a continuous basis. He is capable of lifting more than just a light load or more than 30 pounds, on an occasional basis." The Commission concluded that defendants had rebutted the presumption of an ongoing disability arising from the Form 21 Agreement, and that plaintiff had the capacity to earn wages in gainful and suitable employment. The Commission further awarded defendants attorney's fees "incurred as a result of plaintiff's unfounded litigiousness." Plaintiff appealed to this Court.

Plaintiff argues that the Commission erred by failing to apply the presumption that plaintiff's disability continued until he returned to work at the same wage earned prior to the injury. Plaintiff also contends that defendants failed to prove that plaintiff was employable, and that plaintiff's medical evidence as to his infirmity outweighs the testimony of numerous witnesses and videotaped surveillance of plaintiff regarding his ability to engage in physical activity.

On appeal of cases from the Industrial Commission, our review is limited to two issues: " '[W]hether the Commission's findings of fact are supported by competent evidence and whether the Commission's conclusions of law are justified by its findings of fact.' " *In re Stone v. G & G Builders*, 346 N.C. 154, 157, 484 S.E.2d 365, 367 (1997) (quoting *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 186, 345 S.E.2d 374, 379 (1986)). Because it is the fact-finding body, the Commission is " 'the sole judge of the credibility of the witnesses and the weight to be given their testimony.' " *Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965)). The Commission's findings of fact are conclusive on appeal if they are supported by any competent evidence. *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977). Accordingly, this Court "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Anderson*, 265 N.C. at 434, 144 S.E.2d at 274. In the instant case, we conclude that the Commission's findings of fact are supported by competent evidence that in turn justifies the Commission's conclusions of law.

In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and the extent of disability. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). In the context of a claim for workers' compensation, disability refers to the impairment of the injured employee's earning capacity. *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 432, 342 S.E.2d 798, 804 (1986). "If an award is made by the Industrial Commission, payable during disability, there is a presumption that disability lasts until the employee returns to work . . . ." *Watkins v. Motor Lines*, 279 N.C. 132, 137, 181 S.E.2d 588, 592 (1971). As stated in Rule 404(1) of the Workers' Compensation Rules of the North Carolina Industrial Commission and noted by our Supreme Court in *In re Stone*, however, "this presumption of continued disability is rebuttable." *In re Stone*, 346 N.C. at 157, 484 S.E.2d at 367. In the instant case, any presumptions existing in favor of plaintiff-employee have been rebutted by defendants through witness testimony, videotaped surveillance of plaintiff, as well as medical evidence and strong evidence of fraud.

In *Stone v. G & G Builders*, 121 N.C. App. 671, 674, 468 S.E.2d 510, 512, *disc. review allowed*, 343 N.C. 757, 473 S.E.2d 627 (1996),

*reversed*, 346 N.C. 154, 484 S.E.2d 365 (1997), this Court determined that the defendant-employer failed to rebut the presumption of an ongoing disability raised by a Form 21 Agreement, even though the Industrial Commission had found that plaintiff-employee was capable of returning to work at his regular job. "[I]t does not necessarily follow that an employee who returns to his 'regular job' will earn the same wages he earned before his injury." *Stone*, 121 N.C. App. at 674, 468 S.E.2d at 512. Reversing this decision, our Supreme Court held that the defendant- employer had successfully rebutted the presumption of plaintiff's disability "through medical and other evidence." *In re Stone*, 346 N.C. at 157, 484 S.E.2d at 368. The Court noted that defendants had introduced videotaped surveillance of plaintiff performing various activities, including painting overhead with a roller, lifting and carrying plywood, trimming overhead branches, and throwing horseshoes. Defendants also introduced medical evidence that plaintiff retained no permanent partial impairment to his back, and that plaintiff could return to regular employment with certain restrictions. The Court further observed that the Industrial Commission found plaintiff's testimony regarding his inability to engage in the same or any other employment at the same wages neither credible nor convincing. Because defendants had successfully rebutted the presumption of plaintiff's disability, the Court reinstated the Industrial Commission's opinion and award for defendants.

*Harrington v. Adams-Robinson Enterprises*, 128 N.C. App. 496, 495 S.E.2d 377, *reversed*, 349 N.C. 218, 504 S.E.2d 786 (1998) (*Harrington* I), further illustrates an employer's successful rebuttal of a presumption of disability arising from a Form 21 Agreement where there is evidence of fraud by the employee. In that case, plaintiff-employee and defendant-employer entered into a Form 21 Agreement after plaintiff suffered compensable injuries while in the scope of his employment. Although he sustained permanent partial impairment to his back, plaintiff was eventually released to work by his physician, at which time defendant filed to terminate benefits. The Industrial Commission agreed with defendant that plaintiff had no further claim for workers' compensation benefits and terminated such benefits. On appeal to this Court, plaintiff argued that the Industrial Commission erred in concluding that defendant had rebutted the presumption of disability because defendant had presented no evidence concerning plaintiff's wage-earning capacity. Plaintiff contended that, because defendant had not offered him a job, nor had it shown that there were any jobs available which plaintiff could perform, defendant had not shown that plaintiff was capa-

ble of earning wages greater than or at the level he was earning at the time of his injury. A divided panel of this Court agreed with plaintiff, holding that defendant had not met its burden of disproving plaintiff's disability. The Court stated that "[u]pon a showing of disability by the employee, the employer must produce evidence that suitable jobs are available for the employee and that the employee is capable of getting a job." *Harrington* I, 128 N.C. App. at 498, 495 S.E.2d at 378. Because there was "no evidence to support a finding that the plaintiff retained any earning capacity after he was released by his doctors[,]" defendant failed to rebut the presumption of plaintiff's disability. *Id.* at 499, 495 S.E.2d at 379.

Quoting *Stone*, Judge Walker dissented from the majority, asserting that, " 'as stated in Rule 404(1) of the Workers' Compensation Rules of the North Carolina Industrial Commission, [the] presumption of continuing disability [until the employee returns to work] is rebuttable.' " *Harrington* I, 128 N.C. App. at 500, 495 S.E.2d at 380 (quoting *In re Stone*, 346 N.C. at 157, 484 S.E.2d at 367) (Walker, J., dissenting). Noting that the Industrial Commission found that plaintiff's testimony of continuing pain was not credible, and that he had been released to work, Judge Walker concluded that "the presumption existing in favor of the plaintiff was rebutted by the defendant through medical and other evidence." *Harrington* I, 128 N.C. App. at 501, 495 S.E.2d at 380.

Defendant appealed to our Supreme Court, arguing that, because it had adequately rebutted the presumption of plaintiff's disability, the decision by the Court of Appeals in favor of plaintiff should be reversed. Plaintiff again rejoined that, because defendant had not rehired plaintiff, nor provided vocational assistance, nor shown suitable and available job opportunities for plaintiff, defendant had not proven that plaintiff was capable of earning wages greater than or at the level he was earning at the time of his injury. Our Supreme Court, writing *per curiam*, rejected plaintiff's argument, again reversing the Court of Appeals "[f]or the reasons stated in the dissenting opinion of Judge Walker[.]" *Harrington v. Adams-Robinson Enterprises*, 349 N.C. 218, 504 S.E.2d 786 (1998) (*Harrington* II).

*In re Stone* and *Harrington* II make clear that, although a Form 21 agreement creates a presumption that an employee is disabled until he returns to work, the presumption of disability may be rebutted by an employer through medical and other evidence. *See In re Stone*, 346 N.C. at 157, 484 S.E.2d at 367; *Harrington* I, 128 N.C. App. at 500, 495 S.E.2d at 380; Workers' Comp. R. of the N.C. Indus.

Comm'n 404(1), 2001 Ann. R. (N.C.) 745. Such "other evidence" includes evidence that the employee is capable of obtaining suitable and available employment. *Davis v. Embree-Reed, Inc.*, 135 N.C. App. 80, 84, 519 S.E.2d 763, 765, *disc. review denied*, 351 N.C. 102, 541 S.E.2d 143 (1999); *see also Stamey v. N.C. Self-Insurance Guar. Ass'n*, 131 N.C. App. 662, 665, 507 S.E.2d 596, 599 (1998) ("The employer may rebut the presumption of continuing disability 'through medical and other evidence,' including evidence 'that suitable jobs are available to the employee . . . .' ") *Id.* (citation omitted). The issue now before this Court is whether strong evidence of fraud, coupled with evidence that plaintiff-employee is, in fact, working, is enough to rebut the presumption of plaintiff's continuing disability. We believe that, under the facts of this case, such evidence is sufficient.

In the instant case, defendants presented medical evidence that plaintiff had been released to work, albeit with restrictions, by his physician, Dr. Walton Curl. Dr. Curl opined that plaintiff was physically capable of "get[ting] a job working on cars. He seems to be comfortable doing that." Contrary to plaintiff's claim in his response to defendants' application to terminate benefits, Dr. Curl's 7 February 1994 note did not state that plaintiff suffered from "total and permanent disability," but rather that plaintiff was "permanently disabled." Dr. Curl testified that he did not mean to imply with his note that plaintiff was totally and permanently disabled, only that plaintiff had sustained a permanent impairment to his knee. Further, after viewing videotaped surveillance of plaintiff, Dr. Curl admitted that, based upon plaintiff's subjective presentation of his injury during the course of treatment, plaintiff's videotaped activities exceeded the level of performance of which he thought plaintiff capable.

In addition to the medical evidence, defendants also presented lengthy videotaped surveillance of plaintiff. One of the videotapes, dated October 1997, shows plaintiff working at a logging operation, cutting felled trees with a chain saw. Plaintiff's filmed activities include prolonged standing, walking, stooping, kneeling, and lifting. The private investigator who filmed plaintiff testified that plaintiff worked continuously for over four hours, showing no signs of physical distress. Evidence showed that, during October and November 1997, plaintiff worked at the logging operation on approximately twelve occasions for four to eight hours a day. Plaintiff received about two hundred dollars for his work from Mr. Doug Williams, who claimed that the money was reimbursement for plaintiff's expenses.

Further videotaped surveillance shows plaintiff loading and unloading various items from the bed of his pickup truck, climbing ladders, shoveling sand or dirt, carrying piles of clothing and large boxes, and repairing automobiles. This evidence directly contradicts plaintiff's assertion in his deposition that he could not crouch down, kneel, squat or stand for more than twenty minutes.

Defendants presented numerous witnesses who testified as to plaintiff's physical capabilities. Ken Whapham, a private investigator, testified that in July and August 1994, he observed plaintiff working at an automobile service station, repairing a Mustang. Plaintiff had "grease and dirt on his arms" and at the time was wearing a "dark blue . . . shirt and pants that appeared to be a local work type uniform[.]" Mike Volin, a manager with Lowe's, testified that on 9 April 1996, he observed plaintiff "in the back of a small light tan pickup truck bending down lifting . . . cinder blocks that you build—to build a foundation to another gentleman that was outside of the truck." Mr. Volin watched plaintiff unload the bed of the pickup truck for approximately fifteen minutes. R. Dee Mitchell, an employee at Lowe's, testified that, on 24 October 1995, he drove by a garage on Union Methodist Church Road and observed plaintiff and another man "carrying what appeared to be a complete rear-end [assembly of an automobile]." Mr. Mitchell further testified that he observed plaintiff squatting, carrying heavy objects, and working on vehicles at the same garage on numerous occasions. Two other witnesses testified that they observed plaintiff walking in a smooth, natural manner until plaintiff became aware of their presence, whereupon plaintiff began noticeably limping.

Defendants also presented evidence of their efforts to assist plaintiff in locating employment. When Mr. McIntosh, Lowe's Human Resource Manager, suggested "that GAB would probably want to assign a rehab nurse to assist [plaintiff] in looking for employment[,]" plaintiff replied that "they had done that and for over a year[,]" and that "[i]t didn't do any good, that when [plaintiff] talked to employers and told them about his knee . . . no one wanted to give him a job." Mr. McIntosh also testified that plaintiff consistently told him that "he was unable to do anything based on his knee problem[,]" and that plaintiff's attitude was one of "permanent disability." Because of plaintiff's statements, Mr. McIntosh concluded that Lowe's did not have any work for plaintiff. Moreover, when asked what sort of vocational training he might find helpful, plaintiff stated that "I can't think of anything, because I don't—I've never been one to want to stay inside."

Ray Young, an investigator with the Fraud Division of the Industrial Commission, testified that the Commission had received a fraud complaint regarding plaintiff. Pursuant to the complaint, the Commission conducted an investigation and presented the results to a screening committee, which subsequently referred the case to the District Attorney for prosecution. District Attorney Tom Horner authorized criminal prosecution against plaintiff for fraudulently obtaining Workers' Compensation benefits and for perjury, crimes for which plaintiff was indicted. Plaintiff ultimately pled no contest to the charges, and a prayer for judgment was entered.

Like the plaintiffs in *Stone* and *Harrington* I, plaintiff in the instant case suffered compensable injuries for which he was compensated. Like Mr. Harrington, Mr. Johnson was released by his physician to work, even though he sustained a permanent partial impairment to his knee. Like Mr. Stone, Mr. Johnson was filmed engaging in strenuous physical activities. Further, like the *Stone* and *Harrington* I plaintiffs, the Industrial Commission specifically found that "[p]laintiff's testimony regarding his knee condition is not credible."

We hold that the Commission's findings adequately established that the presumption existing in favor of plaintiff was rebutted by defendants through medical and other evidence. Where there is overwhelming evidence of fraud by the employee regarding both the physical limitations of his injury and his capacity to engage in work-related activities, as well as strong evidence that the employee is actually working on a regular basis, such evidence rebuts the presumption of continuing disability arising from the employee's original injury. *See In re Stone*, 346 N.C. at 157, 484 S.E.2d at 367; *Harrington* I, 128 N.C. App. at 500, 495 S.E.2d at 380 (Walker, J., dissenting). Moreover, we determine that the Commission did not abuse its discretion in awarding defendants attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 (1999). Because we find that the Industrial Commission's findings of fact and conclusions of law were supported by competent evidence, the opinion and award by the Commission, including the award of attorney's fees, is hereby

Affirmed.

Judge GREENE concurs.

Judge HUDSON dissents.

JOHNSON v. LOWE'S COS.

[143 N.C. App. 348 (2001)]

HUDSON, Judge, dissenting.

The majority, relying upon *In re Stone v. G & G Builders*, 346 N.C. 154, 484 S.E.2d 365 (1997), and *Harrington v. Adams-Robinson Enterprises*, 128 N.C. App. 496, 495 S.E.2d 377, *rev'd*, 349 N.C. 218, 504 S.E.2d 786 (1998), concludes that "strong evidence of fraud, coupled with evidence that plaintiff-employee is, in fact, working, is enough to rebut the presumption of plaintiff's continuing disability." I disagree with this narrow interpretation of the holdings in *Stone* and *Harrington*, and I further believe that defendants here have not come forward with the necessary proof to overcome the presumption of plaintiff's ongoing disability arising from the approval of a Form 21.

In my opinion, the Supreme Court in *Stone* and *Harrington* determined that the employers in those cases had rebutted the presumption of disability as a result of a number of different factors, and not simply based on evidence of fraud coupled with evidence that the plaintiff was capable of engaging in various physical tasks. I believe that both *Stone* and *Harrington* can be distinguished from the present case on the grounds that those cases involved at least four significant factors which are not present here. I further believe that the absence of these factors in this case warrants the determination that the presumption of disability has not been rebutted here.

First, in both *Stone* and *Harrington* there was evidence, and the Industrial Commission found, that the plaintiffs had either no permanent physical impairment at all, or, at most, minimal physical impairment. *See Stone*, 346 N.C. at 155, 484 S.E.2d at 366 (no permanent partial disability); *Harrington*, 128 N.C. App. at 497, 495 S.E.2d at 378 (5% permanent partial impairment). Here, on the other hand, plaintiff had knee surgery twice, and was finally released with a 30% permanent impairment rating to the right lower extremity "based upon his problem with severe chondromalacia of his medial femoral condyle and absent medial meniscus as well as his lack of motion." Second, in neither *Stone* nor *Harrington* was the plaintiff under any work restrictions other than general lifting restrictions which applied to all employees. *See Stone*, 346 N.C. at 155, 484 S.E.2d at 366-67 (plaintiff could return to regular employment with "routine weight lifting guidelines"); *Harrington*, 128 N.C. App. at 500, 495 S.E.2d at 380 (plaintiff released to return to unrestricted work). Here, on the contrary, plaintiff was released from treatment with *permanent* restrictions of "no bending, stooping, climbing and no lifting over 30 lb," and was undergoing ongoing medical treatment and supervision.

Third, and most significantly, the plaintiffs in both *Stone* and *Harrington* were found to have been released to return to any job, specifically including their original jobs, and I believe such a finding constitutes some evidence of a particular job being available to the plaintiff. *See Stone*, 346 N.C. at 156, 484 S.E.2d at 367 ("plaintiff has been capable of returning to work at his regular job with [G & G Builders]"); *Harrington*, 128 N.C. App. at 500, 495 S.E.2d at 380 ("plaintiff has remained capable of returning to unrestricted work, including his regular carpenter's job"). Here, there was no such evidence, and, in fact, there was significant evidence to the contrary. The record reflects that plaintiff's doctor, instead of releasing plaintiff to return to his regular job, or any specific job, recommended that "he is an excellent candidate for vocational rehabilitation to retrain him in a sedentary type of position." Furthermore, the record contains a notation made by defendants on plaintiff's restriction form stating "no light duty available." Although the doctor later noted that "I think he can get a job working on cars," there was no evidence and no finding that such a job was available, nor that plaintiff would be hired at such a job, nor any finding regarding any potential wages that plaintiff could earn if he were so hired.

Fourth, in both *Stone* and *Harrington* there was medical and other evidence that although jobs were available to the plaintiffs, the plaintiffs did not make any efforts to return to work after their injuries. *See Stone*, 346 N.C. at 156, 484 S.E.2d at 367 ("plaintiff has not made a reasonable effort under the circumstances to obtain gainful employment"); *Harrington*, 128 N.C. App. at 500, 495 S.E.2d at 380 (although plaintiff was released to unrestricted work, he did not apply for work because he claimed he was incapable of heavy work and light work did not pay enough). Here, there was no evidence that any specific job was available to plaintiff, or that he failed to make efforts to return to work. Although the Commission found as fact that plaintiff had failed to cooperate with job-seeking efforts provided by defendants, the record, in fact, reveals just the opposite. Defendants hired a rehabilitation specialist to work with plaintiff until November 1997. The evidence established that, for a period of several years, the rehabilitation counselor worked with plaintiff only to coordinate medical treatment and to help him regain functional status. This work continued until the "Closure Report," dated 12 November 1997. In that report and in her testimony, the rehabilitation specialist specifically noted that defendants never requested that she assist plaintiff with any job placement efforts. Thus, the counseling was in the nature of medical rehabilitation rather than vocational. *See* N.C.

Indus. Comm'n Rules for Rehabilitation Professionals IIID and E, 2001 Ann. R. N.C. 810. There was no evidence that defendants made any effort to help plaintiff obtain work suitable for him in light of his injuries, age, education and job skills.[1]

It is important to note here that any determination of the adequacy of defendants' evidence to rebut the presumption of disability is difficult because there is no finding at all of what plaintiff's regular job entailed, other than the stipulation that he worked for defendants and earned $211.45 per week. The testimony from defendants' own Human Resources manager, Mitchell MacIntosh, was that plaintiff was terminated "because of company policy after he was unable to return to work pursuant to doctor's orders within twelve months after he was injured," that he did not have a position that "Mr. Johnson could perform taking into consideration both his physical limitations as well as his academic or educational skills," and that he "didn't see an appropriate job that retraining would accomplish [plaintiff's] return to work." Thus, defendants have simply failed to set forth any evidence that plaintiff had regained any wage-earning capacity at all. I believe, therefore, that the distinctions between this case and *Stone* and *Harrington*, especially in light of the additional cases discussed below, support the conclusion that defendants here have failed to present sufficient evidence to overcome plaintiff's presumption of ongoing disability. I do not believe that the record supports any finding that plaintiff had regained wage-earning capacity, as that concept is defined by the Supreme Court of North Carolina.

I also disagree with the general proposition that a defendant may rebut the presumption of disability by simply showing that the plaintiff is capable of performing a few potentially job-related activities, and that there may be some fraud on the plaintiff's part with regard to the extent of his injuries.[2] The majority takes the position that

---

1. In the event that the Commission believed that plaintiff had failed to cooperate with vocational rehabilitation efforts, the appropriate remedy would have been to *suspend*, rather than terminate, his benefits until such time as he began to cooperate. *See Scurlock v. Durham County Gen. Hosp.*, 136 N.C. App. 144, 148, 523 S.E.2d 439, 441 (1999).

2. Here, the Opinion and Award of the Commission focused on videotapes of various physical activities that appeared inconsistent with plaintiff's restrictions, and which the Commission held "demonstrated the capacity to engage in activities through which [plaintiff] could earn wages." However, when asked about the videotaped activities, plaintiff's doctor specifically declined to change either his rating or his restrictions, and emphasized that "on a sustained basis . . . I really honestly don't think he can do more than light duty."

such evidence is generally sufficient to rebut a presumption of disability, even in the absence of any evidence that there is a specific, identifiable job that the plaintiff is able to perform. This interpretation is inconsistent with Supreme Court precedent by which we are bound, and, indeed, with the most basic underlying principles of the workers' compensation scheme.

The Supreme Court and this Court alike have frequently noted that the statutory system of workers' compensation payments is a wage-replacement scheme, and is a limited and exclusive remedy. *See Whitley v. Columbia Lumber Mfg. Co.*, 318 N.C. 89, 348 S.E.2d 336 (1986). It compensates an injured or ill worker only for permanent injury or loss of wage-earning capacity, whichever is the more favorable remedy for the worker. *See id.*; *Gupton v. Builders Transport*, 320 N.C. 38, 357 S.E.2d 674 (1987). Furthermore, it is well-established that the Workers' Compensation Act is to be "liberally construed to benefit the employee." *Rorie v. Holly Farms*, 306 N.C. 706, 709, 295 S.E.2d 458, 461 (1982); *see also Barnhardt v. Cab Co.*, 266 N.C. 419, 427, 146 S.E.2d 479, 484 (1966).

In *Saums v. Raleigh Community Hospital*, 346 N.C. 760, 487 S.E.2d 746 (1998), the Supreme Court explained at length the concepts which come into play in the determination of whether a defendant-employer has presented evidence sufficient to rebut a presumption of disability arising from a Form 21 agreement. In *Saums*, the plaintiff sustained a back injury, underwent surgery twice, and received benefits following the entry and approval of a Form 21. The plaintiff returned to work at a modified light duty job ("quality control clerk") for more than a year, and then left her job with increased pain. After several months, the plaintiff underwent surgery a third time, at which point her benefits resumed. At the end of her recovery from the third surgery, her physician released her to return to the modified job, stating that he could not "find any hard reason why this patient should not be allowed to return to the job that was created by you which would eliminate any strenuous activities." She declined to return to the job and the defendant refused to restart her weekly benefits.

The Supreme Court held that the plaintiff was cloaked in the presumption of ongoing disability by virtue of the Form 21 agreement. *See id.* at 763, 487 S.E.2d at 749. "After the presumption attaches, 'the burden shifts to [the employer] to show that plaintiff is employable.'" *Id.* (quoting *Dalton v. Anvil Knitwear*, 119 N.C. App. 275, 284, 458 S.E.2d 251, 257, *disc. review denied and cert. denied*,

341 N.C. 647, 462 S.E.2d 507 (1995)). The Supreme Court went on to explain that:

> The employee need not present evidence at the hearing unless and until the employer, "claim[ing] that the plaintiff is capable of earning wages[,] . . . come[s] forward with evidence to show not only that suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations."

*Id.* at 763-64, 487 S.E.2d at 749 (quoting *Kennedy v. Duke Univ. Med. Center*, 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990)). The Court then held that the defendant's evidence of an available job, created for and offered to the plaintiff, and within plaintiff's physical limitations, did not rebut the presumption of disability, since this "modified job" was not an accurate reflection of the plaintiff's earning ability in the competitive marketplace, and since there was no evidence that any employer other than the defendant would hire the plaintiff at that wage. *See id.* at 764-65, 487 S.E.2d at 750. Quoting its previous decision in *Peoples v. Cone Mills*, 316 N.C. 426, 342 S.E.2d 798 (1986), the *Saums* court explained why the evidence was insufficient to establish wage-earning capacity:

> If the proffered employment does not accurately reflect the person's ability to compete with others for wages, it cannot be considered evidence of earning capacity. Proffered employment would not accurately reflect earning capacity if other employers would not hire the employee with the employee's limitations at a comparable wage level. The same is true if the proffered employment is so modified because of the employee's limitations that it is not ordinarily available in the competitive job market. The rationale behind the competitive measure of earning capacity is apparent. If an employee has no ability to earn wages competitively, the employee will be left with no income should the employee's job be terminated. . . .
>
> [T]he Workers' Compensation Act does not permit [defendant] to avoid its duty to pay compensation by offering an injured employee employment which the employee under normally prevailing market conditions could find nowhere else and which [defendant] could terminate at will or, as noted above, for reasons beyond its control.
>
> *In this case, it has not been established that the quality control clerk position offered to plaintiff is an accurate measure*

*of plaintiff's ability to earn wages in the competitive job market. There is no evidence that employers, other than defendant, would hire plaintiff to do a similar job at a comparable wage.*

*Saums,* 346 N.C. at 764-65, 487 S.E.2d at 750 (internal quotation marks and citations omitted) (emphasis added).

The evidence presented in the case before the Court is not nearly as strong as the evidence presented in *Saums,* in that defendants here presented no evidence at all that any job existed for plaintiff, let alone one that he could have obtained and that accurately reflected his wage-earning capacity in the competitive job market. Evidence, such as the videotapes presented by defendants in this case, tending to show that a plaintiff on occasion may be capable of performing particular tasks which sometimes might be included among the duties of an unspecified job, even taken together with evidence that a plaintiff may have been less than candid about the extent of his symptoms, does not satisfy the very clear requirements of *Saums.* Such evidence does not establish wage-earning capacity, and is therefore insufficient to overcome the presumption of ongoing disability.

I would reverse the order of the Commission to the extent the Commission found that defendants had rebutted the presumption of ongoing disability. I would further hold that plaintiff had reasonable ground to defend against defendants' Form 24 Application to Terminate Benefits, and that, therefore, the Commission abused its discretion in awarding attorney's fees to defendants pursuant to N.C.G.S. § 97-88.1 (1999). For these reasons, I dissent.