* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Taylor with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Commission, and this is the Court of proper jurisdiction for this action.
2. All parties have been correctly designated, and there are no questions as to misjoinder or nonjoinder of parties.
3. On May 1, 1999, the parties were subject to, and bound by, the provisions of the North Carolina Workers' Compensation Act.
4. The employer-employee relationship existed between plaintiff and defendant on May 1, 1999.
5. The City of Raleigh is self-insured for workers' compensation and group health coverage for retirees. The North Carolina League of Municipalities is the Third-Party Administrator.
6. All Industrial Commission forms, orders, and filings will be submitted as a Stipulated Exhibit.
7. Plaintiff's average weekly wage is $563.56.
8. Plaintiff's date of injury is May 1, 1999.
9. The records identified in Exhibit G are admitted into evidence as records maintained in the regular course of activity of the physician or institution identified.
10. Defendant has paid plaintiff weekly benefits pursuant to N.C. Gen. Stat. § 97-29 from July 20, 1999, to the present, at the rate of $375.73 per week.
11. The parties stipulated the following into evidence:
 • The parties' Pretrial Agreement with attached medical records was marked Stipulated Exhibit 1; *Page 3 
 • The Industrial Commission forms, filings, and orders were marked Stipulated Exhibit 2;
 • Surveillance reports, video and DVD were marked Stipulated Exhibits 3, 4 and 5;
 • The deposition of Sue Miller taken on July 31, 2007 was marked Stipulated Exhibit 6;
 • The City of Raleigh payment history was marked Stipulated Exhibit 7; and
 • The North Carolina League of Municipalities payment history was marked Stipulated Exhibit 8.
14. The following exhibits were admitted into evidence:
 • Defendant's Exhibit 1 — Signature of Alda Miller written by Sue Miller;
 • Defendant's Exhibit 2 — 2004 Bear Den W2s;
 • Defendant's Exhibit 3 — Form 90 Report of Earnings;
 • Defendant's Exhibit 4 — Form 90 Report of Earnings;
 • Defendant's Exhibit 5 — 2004 Payroll Records; and
 • Plaintiff's Exhibit 1 — April 2006 Boatwright Report.
15. Following the hearing before the Deputy Commissioner the post-hearing depositions of Dr. Joel D. Krakauer, Dr. Grace W. Rose, Dr. James Boatright, Ms. Anthea Hollifield, Mr. Robert Willis, Ms. Tabitha Thompson, Ms. Alda Triplett, Ms. Barbara J. McMahon, Ms. Louanne Hawn, and Ms. Mildred Dellinger were admitted into the record of evidence.
 * * * * * * * * * * *Page 4 
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born April 8, 1957 and was 57 years old at the time of the evidentiary hearing. She is a high school graduate with two years of college and is married to Alda Miller.
2. Plaintiff began work with defendant in the early 1990s. Her duties as a Program Services Assistant involved coordinating approximately 2000 volunteers, writing grants, preparing a budget, and extensive use of a computer. This work required a great deal of keying. In 1999, she developed bilateral pain, numbness, and weakness in her upper extremities. Defendant accepted her upper extremity conditions as occupational diseases on a Form 21 Agreement for Compensation for Disability, dated October 1, 1999, and began paying plaintiff weekly temporary total disability benefits which have continued through the date of the evidentiary hearing.
3. Following her injury, plaintiff came under the care of Dr. Joel Krakauer, an orthopedic surgeon, who diagnosed bilateral epicondylitis with ulnar neuritis of the left elbow. During the course of his treatment of plaintiff, Dr. Krakauer performed a left cubital tunnel release on September 20, 1999, a right lateral epicondylar release on January 24, 2000, and a left lateral epicondylar release on June 26, 2000.
4. On December 12, 2000, plaintiff reached maximum medical improvement. She was assigned a four percent permanent partial impairment to the right arm and a 22 percent permanent partial impairment to the left arm. Plaintiff was released from Dr. Krakauer's care and instructed to return on an as needed basis. *Page 5 
5. Plaintiff did not return to Dr. Krakauer until June 17, 2002 when she complained of ongoing problems with her hand and elbow. Dr. Krakauer prescribed Darvocet and requested plaintiff return on an as needed basis.
6. Defendant did not have a job within plaintiff's restrictions. Plaintiff underwent extensive vocational rehabilitation directed by defendant, including a trial of voice activated software designed to decrease the amount she would need to use her hands and arms. However, this trial was unsuccessful. Further vocational help was not provided, and plaintiff remained out of work.
7. In 2004, plaintiff and her husband moved to Spruce Pine. Plaintiff's husband, Alda Miller, began working at the Bear Den campground in Spruce Pine beginning in Spring 2004. In Fall 2004, Alda Miller was made a manager of the Bear Den campground and was paid on a salary.
8. Plaintiff performed various activities at the Bear Den campground. The types of activities performed are not in dispute. Plaintiff performed work in the office, including some work on a computer, and answering the phone. Plaintiff also performed some cleaning of the Bear Den store, hung decorations for various events, participated in the interview of new employees, and went shopping for the store.
9. Plaintiff characterized these activities as volunteer activities that she performed without compensation to help her husband who was the manager of the Bear Den campground. She explained that she performed these activities without payment because the only other alternative would be to remain alone in the double-wide trailer in which she lived. Plaintiff explained that given the alternative, she preferred to spend her time with other people. *Page 6 
10. Plaintiff was not on the schedule at Bear Den. The hours she volunteered varied substantially based on how her arms were feeling. She could not work on a regular schedule because of flare-ups in her condition. She attempted to remain within her medical restrictions and limited her activities accordingly because her condition flared up if she exceeded her restrictions.
11. Plaintiff's characterization of the extent of her activities was corroborated by Mr. Richard Moody, the owner of the Bear Den campground, as well as by her fellow employees, Ms. Tabitha Thompson, Ms. Alda Triplett, Ms. Barbara J. McMahon, Ms. Louanne Hawn, and Ms. Mildred Dellinger. Defendant's surveillance corroborates plaintiff's description of the nature of her activities and the variability in hours volunteered. The wage and tax records of Bear Den confirm plaintiff was not paid for her volunteer activities.
12. Defendant presented the evidence of former employees. Mr. Robert Willis was only present at the Bear Den campground while plaintiff and her husband were there for a little more than one month. His testimony that plaintiff was paid through her husband's paycheck is contradicted by the wage records, which show that Alda Miller was paid less in the manager position than Mr. Willis, the previous manager, was paid. His testimony is also contradicted by the owner of Bear Den, Mr. Moody, who was actually responsible for paying the Bear Den employees.
13. Ms. Anthea Hollifield worked at the Bear Den campground from March 2002 through March 2006. She testified that plaintiff was regularly on the work schedule and worked 24 to 34 hours per week. She testified that Mr. Willis told her plaintiff was paid through her husband and once plaintiff made manager she was no longer included on the work schedule. *Page 7 
14. The testimony of plaintiff, Mr. Moody, Ms. Thompson, Ms. Triplett, Ms. McMahon, Ms. Hawn, and Ms. Dellinger are found to be more credible than that of Mr. Willis and Ms. Hollifield and the Full Commission finds that plaintiff's activities at the Bear Den campground were sporadic depending upon plaintiff's level of pain and were performed without compensation.
15. Dr. Krakauer is plaintiff's authorized treating physician and has been treating her since 1999. Dr. Krakauer is of the opinion that plaintiff is permanently and totally disabled. Dr. Krakauer reviewed defendants' surveillance evidence and testified the surveillance did not change his opinion.
16. Dr. James Boatright conducted an independent medical examination of plaintiff. Defendant asked Dr. Boatright to assume that plaintiff had been working 24 to 40 hours per week at Bear Den since April of 2004, including hours at a time of keyboarding. Dr. Boatright was of the opinion that even assuming these facts, plaintiff is unable to engage in competitive employment.
17. Dr. Grace W. Rose was plaintiff's internal medicine physician until April 2003. Dr. Rose was of the opinion that plaintiff is unable to perform sustained sedentary work and that plaintiff would have difficulty with regular attendance and maintaining consistent production without having to take an unreasonable number of breaks.
18. The testimony of Dr. Krakauer, Dr. Boatright, and Dr. Rose establishes plaintiff is totally disabled from sustained competitive employment at this time.
19. Plaintiff is at maximum medical improvement.
20. Plaintiff returned to Dr. Krakauer in 2005 and 2006. On February 14, 2006, due to plaintiff's complaints of pain, Dr. Krakauer ultimately restricted plaintiff to lifting no greater *Page 8 
than two pounds, among other restrictions. Dr. Krakauer also referred plaintiff to her primary care physician, Dr. Grace Rose. On August 8, 2006, Dr. Krakauer wrote a letter indicating that due to plaintiff's relocation to Spruce Pine, he would refer her to Dr. Susan Snider for follow-up care.
21. Dr. Krakauer referred plaintiff to Dr. Edward Lewis, an anesthesiologist, for medication and pain management. Defendant has agreed to pay for this treatment.
22. Dr. Krakauer's referrals of plaintiff to Dr. Rose, Dr. Snider, and Dr. Lewis are reasonable and necessary to effect a cure or give relief from plaintiff's compensable conditions.
23. Plaintiff is at substantial risk of requiring future medical treatment including medication management and physical therapy.
24. The parties agree that plaintiff will seek treatment with Dr. Lewis.
25. Prior to Dr. Krakauer's referrals in 2006, plaintiff's medical treatment dating back to before 2003 with Drs. Rose and Snider was unauthorized. Plaintiff's request to the Commission for reimbursement of the unauthorized medical treatment Dr. Rose or Dr. Snider provided prior to August 2006 was not made until November 30, 2006. This request was not made within a reasonable time.
26. Defendant has not litigated or defended this matter without reasonable grounds.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The parties entered into a Form 21 Agreement for Compensation for Disability, which represents "an admission of liability by the employer for disability compensation pursuant *Page 9 
to the Workers' Compensation Act." Kisiah v. W.R. Kisiah Plumbing,Inc., 124 N.C. App. 72, 77, 476 S.E.2d 434, 436 (1996), disc. reviewdenied, 345 N.C. 343, 483 S.E.2d 169 (1997). Once the Form 21 is approved by the Commission, a presumption of total disability exists until defendant successfully rebuts the presumption by showing that suitable jobs are available and also that plaintiff is capable of obtaining one, taking into account plaintiff's physical and vocational limitations. Saums v. Raleigh Community Hospital, 346 N.C. 769,487 S.E.2d 746 (1997); Franklin v. Broyhill Furniture Industries,123 N.C. App. 200, 472 S.E.2d 382, cert. denied, 344 N.C. 629, 477 S.E.2d 39
(1996). The presumption of disability can also be rebutted through medical or other evidence. See Johnson v. Lowe's Companies, Inc.,143 N.C. App. 348, 546 S.E.2d 616 (2001).
2. In the case at hand, plaintiff's medical evidence from Dr. Krakauer, Dr. Rose, and Dr. Boatright have established plaintiff is medically disabled. Russell v. Lowes Product Distrib.,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). Further, defendant has failed to show that suitable jobs are available for plaintiff taking into account plaintiff's physical and vocational limitations. Plaintiff's sporadic, volunteer activities at Bear Den Campground do not demonstrate plaintiff's wage earning capacity. Saums v. Raleigh CommunityHospital, supra.
3. Plaintiff's treatment with Dr. Krakauer for her compensable work-related injuries has been reasonable and necessary to effect a cure or give relief. Defendant is responsible for paying for this treatment and all treatment within the chain of referrals from Dr. Krakauer, including any treatment Dr. Rose provided after February 14, 2006 that related to plaintiff's compensable injuries and any treatment Dr. Snider provided after August 8, 2006 that related to plaintiff's compensable injuries. N.C. Gen. Stat. § 97-25; I.C. Rule 407(4). *Page 10 
4. Plaintiff's request for reimbursement of the unauthorized medical treatment provided by either Dr. Rose or Dr. Snider prior to Dr. Krakauer's referrals in February 2006 and August 2006, respectively, was not timely. N.C. Gen. Stat. § 97-25.
5. Because plaintiff is at substantial risk of requiring future medical treatment, she is entitled to lifetime medical care for her compensable conditions including medication management and physical therapy. N.C. Gen. Stat. § 97-25.1.
6. Dr. Lewis and Dr. Krakauer are hereby designated plaintiff's authorized treating medical providers. N.C. Gen. Stat. § 97-25.
7. Plaintiff's counsel has rendered valuable services and is entitled to a reasonable attorney's fee. N.C. Gen. Stat. § 97-90.
8. Defendant's conduct in this matter does not constitute stubborn unfounded litigiousness. N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay ongoing total disability compensation at the rate of $375.73 until further Order of the Commission. This award is subject to an attorney's fee approved in Paragraph 3.
2. Defendant shall pay all reasonable medical expenses incurred to be incurred related to plaintiff's compensable injuries. This includes payment of treatment for her compensable injuries incurred with Dr. Krakauer, Dr. Rose after February 14, 2006, Dr. Snider after August 8, 2006, and Dr. Edward A. Lewis. *Page 11 
3. An attorney's fee of 25% is approved as a reasonable attorney's fee for plaintiff's attorney and shall be deducted directly from the amounts owed to plaintiff and paid directly by defendant to plaintiff's attorney.
4. Defendant shall pay the costs.
This the 2nd day of March, 2009.
S/_______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER